CERVECERÍA CORONA, INC., Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, CAGUAS PART, JUAN C. SANTIAGO MATOS, JUDGE, Respondent; ASOCIACIÓN PUERTORRIQUEÑA DE ARTISTAS Y TÉCNICOS DEL ESPECTÁCULO (APATE), Intervener.

No. O-70-133. Decided March 5, 1971.

*Beverley, Rodríguez, Estrella & Pesquera* for petitioner. *Jorge López Santiago* and *Ferdinand Ortega* for intervener.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

The Asociación Puertorriqueña de Artistas y Técnicos del Espectáculo, known by its initials as APATE, filed, before the Superior Court, Caguas Part, a petition for declaratory judgment against artist Tom Jones and Jack Hooke, Abraham Peña, and Cervecería Corona, Inc. It prayed the court to render judgment declaring (1) that plaintiff is a syndical organization recognized and with sufficient legal standing; (2) that the Federación de Músicos de Puerto Rico is not entitled to intervene in the claim which APATE makes concerning its right to dues for the artistic performances of defendant Tom Jones and his manager Jack Hooke, and (3) that the precedent of paying to APATE separate dues for their respective performances having been already established by artists, artistic groups, and companies who have per-

formed in Puerto Rico, the corresponding dues in the instant case is plaintiff's right.

The difference in opinion arises as to whether or not defendants are bound to pay plaintiff the dues claimed by the latter on account of Tom Jones' artistic performances in Puerto Rico. Cervecería Corona, Inc., was included as a defendant because "it has financed the tour in Puerto Rico of the Tom Jones-Jack Hooke enterprise at the Hiram Bithorn Stadium and for all effects of its publicity and organization it has collaborated as co-producer in said show supporting codefendants in this case to refuse to acknowledge the Asociación Puertorriqueña de Artistas y Técnicos del Espectáculo and its right to claim dues which are the reason for the controversy between the parties."

Codefendant Cervecería Corona, Inc., appeared by a motion entitled "Motion to Dismiss and/or for Summary Judgment." A sworn statement of its Vice-President, Mr. Antonio Escudero, Jr., and copy of the contract executed between Cervecería Corona and Jack Hooke Management Co., Inc., were attached to said brief.

Said codefendant alleged that as it appears from the allegations in the complaint and from the documents which were attached to its motion, "no legal controversy exists as to any material fact to indicate possible legal or contractual liability of any kind on the part of Cervecería Corona, Inc., towards plaintiff, and it is proper, as a question of law to render summary judgment dismissing the complaint insofar as the appearing party herein is concerned."

After said motion was discussed, without any other allegations or documents but the complaint, the sworn statement, and the contract introduced by codefendant Cervecería Corona, Inc., the trial court denied it by an order entered on June 5, 1970, ruling that ". . . considering the details of the said contract, the Cervecería Corona, Inc., acted as Tom Jones' agent for his artistic activities in Puerto Rico, for

which reason in the light of the complaint it was bound to pay the dues which its principal had to pay in Puerto Rico to plaintiff and which he did not pay."

We issued a writ of certiorari to review said order.

■ For the purpose of deciding the motion to dismiss and/or summary judgment, it was necessary to consider as true, such as the trial court did, plaintiff's allegations. According to the same, the APATE is a syndical organization duly recorded and recognized as a labor union by different government agencies, insular as well as federal; that as such syndical organization it has proceeded at all times under the labor laws which govern its activities and as such it has received from its constitution the recognition and corresponding syndical dues for the performances of artists, groups, or persons from abroad who arrive and perform for profit in our island; that defendants have refused to recognize the legal standing and rights of plaintiff and as a result of that difference defendant Tom Jones refused to pay to plaintiff's treasurer his corresponding dues of two percent (2%) of the remuneration which he shall receive for his artistic activity in Puerto Rico; that manager Jack Hooke refuses to pay the Emergency Fund for plaintiff's syndical six percent (6%) of the payroll of the artists who take part in the Tom Jones show.

The only contractual obligations which Cervecería Corona, Inc., contracted in connection with the presentation of artist Tom Jones in Puerto Rico are set forth in the contract executed by it with Jack Hooke Management Co., Inc., on February 11, 1970.

In said contract, Hooke agreed that in the publicity campaign of the Tom Jones concert, all the advertising, including tickets, radio, newspaper, television, and signs would carry the "logotype" "Corona Presents Tom Jones in Concert." Corona agreed to pay an amount which would not exceed $17,000 to satisfy the cost of several round-trip airline tickets from New York to Puerto Rico, hotel rooms, 25 musicians to

play for the show, transportation of a sound system from New York, two sound engineers, printing and selling of tickets for the concert, rental for a "limousine" to be used by Tom Jones, preparation of a stage, and to provide 4,000 spectator chairs around the stage. Hooke agreed to pay the rental of the Hiram Bithorn Stadium as well as the excise tax on the admission tickets and the tax withheld at source from the payments which would be made to Tom Jones or to Hooke.

The contracting parties did not stipulate any obligation in favor of APATE, or any other local union.

It is not necessary to consider the question whether or not Cervecería Corona acted as Tom Jones' agent in the concert which the latter gave in Puerto Rico for the purpose of fixing liability, since in order to reach that conclusion we have to determine first whether Tom Jones and Hooke had any obligation concerning the APATE.

■ Obligations are created by law, by contracts, by quasi-contracts, and by illicit acts and omissions or by those in which any kind of fault or negligence occurs. Section 1042 of the Civil Code (31 L.P.R.A. § 2992). The APATE was not a party in the contract executed between Cervecería Corona and Hooke nor does said contract contain any stipulation in its favor. Therefore, it cannot claim under that contract, § 1209 of the Civil Code (31 L.P.R.A. § 3374). It is necessary to determine whether the obligation of Tom Jones, Hooke, and Cervecería Corona in favor of APATE is created by law, in which case it would be demandable. We do not find that the obligation whose fulfillment APATE claims stems from the Civil Code. Nor any special law has been pointed out as source of said obligation. Section 1043 of the Civil Code (31 L.P.R.A. § 2993).

As it appears from the complaint, APATE seems to ground its right to payment of dues by Tom Jones and Hooke on (1) that it is a syndical organization which has proceeded at all times under the authority of the labor laws which

govern its activities and (2) that as such syndicate it has received the recognition and corresponding syndical dues for the performances of artists, groups, and persons who come from abroad and perform for profit in our island.

 As far as we know there is no law requiring foreign artists to pay dues or any kind of tax to APATE[1] and on the other hand, the precedent that on previous occasions other foreign artists have paid dues, is not, at law, source of obligations. If the obligation arises from statutory provisions or regulations promulgated by APATE itself, then the juridical postulate that our Civil Code does not recognize nor regulate the unilateral declaration of intention as a source of obligations is applicable. *Ramírez* v. *Gautier*, 87 P.R.R. 470 (1963).

 If Tom Jones or Hooke are not bound by contract or by law to pay dues to the APATE, Corona is not bound either although the latter would have acted as the agent of the former.

---

[1] Petitioner points out correctly in its brief: "In Puerto Rico there is no statute imposing the obligation upon a promoter of artistic tours in Puerto Rico of foreign artists to pay any dues whatsoever to a syndical or labor organization for such performance, nor obligation to make any contribution whatsoever to the welfare fund of a syndical organization. It is well known that in the absence of a statute imposing such obligation, the only other source or origin of responsibility in such sense would be a labor agreement or work contract between the syndical organization and a certain employer, a contract entered into and subscribed to at the bargaining table in the free use and enjoyment by the parties of the freedom to contract recognized and protected by the authority of law in Puerto Rico. Thus, Act No. 17 of April 17, 1931, as amended (29 L.P.R.A. § 171 *et seq.*) contemplates and allows to deduct from the wages of an employee the dues payable to a union 'when in a labor collective agreement entered into between an employer and an agent of his employees in an appropriate unit for collective bargaining, a check-off is stipulated for a union not organized or operating on the basis of unfair labor standards.' On the other hand, the Labor Management Relations Act, § 302, permits the contribution by interstate commerce employers to trust funds for the benefit of the employees but subject, among other requisites, to the existence of a written contract or agreement between the employers and the union representative of their employees and to the condition that it be thus provided for the joint administration of such funds." (Pages 4 and 5 of Corona's Brief.)

The order entered on June 5, 1970, must be reversed and the case remanded for the trial court to render judgment dismissing the complaint against the petitioner Cervecería Corona, Inc., with other pronouncements proper at law.